### 17812.   PIERCE *et al v.* THE STATE.

BROYLES, C. J.   The evidence was insufficient to authorize the verdict, and the refusal to grant a new trial was error.

*Judgment reversed.   Luke and Bloodworth, JJ., concur.*

DECIDED MARCH 8, 1927.

Car-breaking; from Whitfield superior court—Judge Tarver. November 27, 1926.

Jim and Bill (or Will) Pierce were convicted under an indictment which charged them and Jesse Bates and Cliff Whitener with breaking and entering a certain freight-car of the Western and Atlantic Railroad on January 28, 1924, and taking from it, with intent to steal, a sack of dry salt meat, two crates of lard in tin cans, a crate of "wiene" sausage, a hoop or crate of cheese, and a hog.

The brief of evidence states that "The evidence of Jess Bates in another case, not this identical case, is read to the jury by the State." This evidence is not set out in the record. The other codefendant, Cliff Whitener, testified: "I did go to the chain-gang for this car robbery. . . I know Jim and Bill Pierce. I was up at the Hotel Dalton one night and Bill came in where I was at, . . and Bill asked me if I wanted to make some money; . . we came out of the hotel and went down the street, and Jim was out there, Jim Pierce. We got in my car, . . went down the street, . . and picked up Jess Bates, . . went down to South Depot street, told me to turn in to the Manley Jail Works; I turned in there; they told me they would be back in about ten or fifteen minutes. I waited there and they came up there with a can of lard, cheese, Bologna sausage, and a dressed hog. The dressed hog was wrapped in a sack; . . it weighed something over one hundred pounds, I guess. They didn't tell me where they got it. . . They taken all the stuff out but the . . dressed

---

Criminal Law, 16 C. J. p. 1178, n. 63.

hog, carried it off, taken it out of the car. I don't know exactly which direction they went with it; it was dark. . . They were gone, I guess, twenty minutes. Bates and Bill and Jim went away with that, carried what was carried away from the car. They did not bring any of it back. We all got in the car and went . . to a little shack, John Pat Quillian. We put the hog under his bed. . . Then we came back home. We went back to John Pat Quillian's shack. It was there. He was not there. We didn't do anything with it; we left the hog there. . . I made a confession of this in Louisville to the detectives. . . I was brought back and denied this thing vigorously. . . I went before the grand jury and swore I had nothing to do with it. . . I remember when you tried this case on the first day of August, 1925, that I made a statement then to that jury and still protested my innocence, and told them that I was not guilty and knew nothing about it. . . I am telling the truth now."

J. M. Love testified that about 6:45 on a morning in 1924 he discovered a car "on the W. & A. side" that was broken open, . . just east of the Manley Jail Works. . . The east door was open; the seals had been broken. The car was loaded with perishables, meat, lard, and such like, "on the W. & A. side-track." W. N. Carpenter testified that in 1924 his business was "checking freight, W. & A. depot;" that a paper introduced in evidence was "the original billing that accompanied that car," and that there was "one sack of meat short for Vining and two crates of lard for Vining. . . This car was to be broken en route; it was broken here. After it was broken there was merchandise in it for towns south of here; had a lot of meat in it to be unloaded south of here; my checking was for such articles billed to Dalton. . . I do the checking about eight in the morning. . . That was a W. & A. shipment, Western and Atlantic Railroad." Steve J. Wiley testified that in January, 1924, his business was checking freight, and when the train arrived at Cartersville he "checked a hog short; . . from the billing that was one sack of dressed hog, 112 pounds;" that was the only thing he checked short "out of that car."

A police officer testified, that when he "found out these boys were connected with this car breaking," he made efforts to arrest the Pearce boys; he "found out Jim was gone, but later found he was home in bed, sick; that was a good while after the robbery;

. . seems like it was a year or longer; . . he made no effort to get away" that the witness knew of, "and he came down and made bond;" that Bill was located in Lenoir City, Tennessee, and got away, but finally came back; "his father brought him up."

The Pierces, in their statements at the trial, denied that they were guilty or knew anything about the stealing. Two witnesses testified as to the finding of several buckets of lard on the bank of Mill creek. A yard-conductor of the Western and Atlantic Railroad testified that on or about January 24, 1924, "about 8:30," he discovered that a car in the yard had been broken; it was next to Manley's Jail Works, and was loaded with meats; the seals were broken on the east side.

Counsel for the plaintiffs in error contended that there was no evidence to connect the Pierces with the car-breaking, except the uncorroborated testimony of accomplices, that one accomplice could not corroborate another, and that the verdict, therefore, was contrary to law.

*George G. Glenn, D. W. Mitchell,* for plaintiffs in error cited: *Bishop* v. *State,* 9 *Ga. App.* 205; *Williams* v. *State,* 159 *Ga.* 729 et seq.

*C. C. Pittman, solicitor-general,* cited: *Chance* v. *State,* 33 *Ga. App.* 137; *Williams* v. *State,* supra.